## MARTIN & HILL CASH-CARRIER CO. v. MARTIN.

(Circuit Court, D. Massachusetts. May 28, 1894.)

No. 2,644.

1. PATENTS—ASSIGNMENT—ESTOPPEL.

The assignor of a patent is not estopped by his assignment from limiting its scope by reference to the prior state of the art; nor is he so estopped by having marked on articles made by him for the market the dates of the patent, and of all patents controlled by him for such devices, even if such marking amounts to a representation that the articles are covered by all the patents.

2. SAME—LIMITATION BY PRIOR STATE OF ART—INFRINGEMENT.

The Martin patent, No. 255,525, claiming, in an automatic cash-box system, the track, endless cord, cash box, and appliances described for attaching and automatically detaching said box, and a suitable motor, when construed with reference to prior structures, particularly that described in the English patent No. 377 of 1878, to Wirth, does not cover all machines having a box carried on a track, an endless cord operated by a motor, and devices for attaching and automatically detaching the box, but covers only the combination of track, car, cord, and motor, and the device for attaching and automatically detaching the car, and is therefore not infringed by the apparatus described in the Martin patent No. 399,150, which has a different device for making the attachment and automatic detachment.

This was a suit by the Martin & Hill Cash-Carrier Company against Joseph C. Martin for infringement of a patent.

M. B. Philipp, E. C. Gilman, and J. S. Rusk, for complainant.

Fish, Richardson & Storrow and Herbert L. Harding, for defendant.

CARPENTER, District Judge. This is a bill in equity to restrain an alleged infringement of the first claim of letters patent No. 255,525, issued March 28, 1882, to the respondent, Joseph C. Martin, for automatic cash-box system. The respondent has assigned the patent to the complainant, and is thus estopped to deny the validity of the patent. The complainant here contends that he is also estopped from limiting the scope of the patent by reference to the prior state of the art. I shall not discuss this question further than to say that I cannot agree with the argument of the complainant, because it seems to me that the representation implied by the law in a sale is only a representation that the thing sold is an existing and valid right as the letters purport to grant, and that the nature and extent of the thing granted may be ascertained by reference to existing structures which are presumed to be equally well known to both parties, and so to have entered equally into the consideration of both, as they looked at the subject-matter of their contract, and estimated its value for purposes of sale and purchase respectively.

The complainant also argues that the respondent is estopped from citing the prior state of the art; because, on apparatus made by him or under his direction for the market, he has caused to be marked the date of the patent here in suit, such apparatus differing from that shown in the patent in particulars of the same sort and rank of importance as those in which the alleged infrin-

ging device differs from the device shown in the drawings and specification of the patent. To this argument the sufficient answer seems to me to be that he marked on the apparatus the dates also of several subsequent patents issued to him for improvements, and in fact of all the patents which he controlled on devices of this sort. I do not think that this proceeding amounts to a representation that the apparatus on which the marks are put would be, if made by an unauthorized person, an infringement on all the patents so indicated, still less on all the claims of all those patents, but only to a representation that such an apparatus might be an infringement on some part of any or all such patents. The dates are put on to protect against any possible claim that the patented article had been sold unmarked, and not to set up a claim as to the extent of the protection afforded by the patents; and, even if it were otherwise, the assertion that all the claims of all the patents cover the device so marked could be taken to be nothing more than a statement of the opinion that, on the facts known to the world, the claims must as a matter of law be so construed. I take it to be still the rule, in general, that a representation incorrect in point of law may not be the basis of an estoppel.

The defense is put on the ground that the respondent does not infringe—First, if the patent be read without reference to the state of the art; and, secondly and more especially, if it be properly construed by reference to pre-existing structures and descriptions. On the first point, I am not clear, and therefore do not announce any conclusion. It is difficult to say what would be the construction put on the patent by one who is ignorant of the facts disclosed by the history of the art of constructing cash carriers.

The claim under which the bill is drawn is as follows:

(1) In an automatic cash-box system, the track, b, the endless cord, o, the cash box, v, and appliances, substantially as described, for attaching said box to said endless cord, and for automatically detaching said box therefrom, and a suitable motor to give a motion to said cord, all combined and operating substantially as set forth.

The complainant argues that this claim covers all machines which have a box carried on a track, an endless cord operated by a motor, a device for attaching the box to the cord, and a device for automatically detaching the same. In this view it is undoubtedly infringed by the device used by the respondent, which is that represented in letters patent No. 399,150, issued March 5, 1889, to the respondent. The box, the track, the cord, and the motor are the same. The attachment in the patent in suit is made by lifting the spring cover by hand, and in the respondent's device by turning the rock shaft by hand, or by pushing the box forward by hand, so that the rock shaft will be engaged with a cam, and so be turned as before; and the automatic detachment is effected in the patent by two curved guides, between which the cord-clamp lever and the thumb piece run, and are thus made to approach each other, and in the respondent's device by a cam which engages the end of the rock shaft.

But, when the prior structures are examined, it seems to me that the claim cannot be construed so broadly as is above indicated. Not to refer particularly to other earlier devices which seem to me to throw much light on the question, I speak only of one reference, concerning which the parties were fully heard at the argument. The English patent to Frank Wirth, 1878, 29th January, No. 377, seems to me clearly to anticipate this claim if it be construed so broadly as the complainant desires. There is the track, the car or box, the endless cord and motor, the means for attaching, by hand, the car to the moving cord, and the device—as in the other cases, a cam or wedge—for automatically detaching the car from the cord. The differences are as follows: In the first place, the car is suspended below the track, and not carried above the track as in the patent. But in both cases it is carried and supported by the track. The load is not readily removed from the car of Wirth, except by tipping the car, or by a gate in the bottom or sides; and the car is not easily carried up an inclined track, because the car might by its weight raise one carrying wheel from the track, and so disorganize the mechanism. To adapt the Wirth mechanism to the modified function thus suggested would not, as it seems to me, require the formation of a new system or class or subclass of apparatus. It calls only for an apparatus containing the Wirth principle and performing the Wirth function with certain added functions, which perhaps themselves may be the basis of a valid claim for an invention. To illustrate this, if it were desired to obtain those results which can be reached only with the car above the track, there must be added another track, or, what is the same thing, the track must be widened, and a slot made in the middle for the grip apparatus, and the grip apparatus must be reversed in position so as to reach the cord below. These are, I think, only consequential changes, made necessary by and involved in the removal of the car from a position below to a position above the track. To look at the question in the other aspect, it seems to me that, if the complainant's construction be allowed, he who should construct an apparatus after the drawings of Wirth could not escape the charge of infringement by showing that his car is suspended below rather than placed on the track.

The second difference between the patent in suit and the patent to Wirth is in the attaching and detaching mechanism. In neither is the attaching mechanism strictly automatic. In the patent the detaching mechanism stops the car at the point where the grip is detached, and, being removed by hand, the car is again attached, and proceeds on a new journey. In the Wirth device the car proceeds by inertia after it is detached, and the detaching device performs no further function. In this particular, the apparatus of the respondent follows the Wirth device, rather than the device of the patent.

I think the patent must be construed to cover the combination of track, car, cord, and motor, and a device for attaching and automatically detaching the car. I make, therefore, four elements,—the first two being simple elements, the third having one subsidiary

element, and the fourth being a compound element. The device of the respondent, as I read the patent, does not contain the fourth element, and so does not infringe. The bill must therefore be dismissed, with costs.